UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPS SHARED TECHNICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> OVERWATCH SYSTEMS, LTD., <br><br> Defendant. _____/ | No. C-14-1112 EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> **(Docket No. 11)** |

Plaintiff IPS Shared Technical Services, Inc. has filed suit against Defendant Overwatch Systems Ltd., asserting, *inter alia*, that Overwatch breached a contract entered into between the parties. Currently pending before the Court is Overwatch's motion to dismiss for lack of personal jurisdiction. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Overwatch's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

IPS is a California corporation with its principal place of business in California. *See* Kramer Decl. ¶ 2; Boice Decl. ¶ 2.[1]  Overwatch is a Delaware corporation with its principal place of business in Texas. *See* Overly Decl. ¶ 2.

---

[1] Although Overwatch has challenged the admissibility of the Boice declaration, the Court shall consider it. Overwatch is not prejudiced thereby because, even with the declaration, IPS cannot establish a prima facie case of personal jurisdiction.

1    IPS filed suit against Overwatch, asserting, *inter alia*, a breach of a contract between the two
2 parties. The contract relates to a government program known as the United States Army Future
3 Combat System ("FCS") program. Boeing Company was the prime contractor for the systems
4 development and demonstration phase of the program. Boeing hired Overwatch to provide certain
5 software applications and systems. Overwatch, in turn, hired various subcontractors, one of which
6 was IPS. IPS was hired to provide weather information systems. *See* Overly Decl. ¶ 3.

7    There is no dispute that, under the IPS/Overwatch contract, the principal place of
8 performance was Colorado. *See* Overly Decl. ¶ 5; Boice Decl. ¶ 4. Indeed, IPS expressly concedes
9 that "the engineering effort for the contract which is the subject of this dispute was performed in
10 Colorado," as well as Texas, Boice Decl. ¶ 4, where, under the contract, all deliverables provided by
11 IPS would be sent (*i.e.*, to Overwatch's facility in Texas). *See* Overly Decl. ¶ 4. IPS maintains,
12 however, that the contract was negotiated in California (as well as amendments). IPS also asserts
13 that "ongoing, regular administration of the Contract was performed in California" because, *e.g.*,
14 Overwatch sent payments to IPS in California and IPS reviewed and analyzed costs in California.
15 Boice Decl. ¶¶ 6-10. IPS also claims that Overwatch requested an audit, which ultimately was
16 conducted in California. *See* Boice Decl. ¶ 11. However, the government agency which Overwatch
17 asked for audit assistance was based in Texas. It appears that the government agency in Texas (not
18 Overwatch) made the decision for the audit to take place in California – presumably, because that is
19 where IPS is based. *See* Lutz Decl. ¶ 5; Boice Decl. ¶ 12 & Ex. B (audit report) (reflecting that audit
20 report was prepared for government agency in Texas, though it was prepared by a branch office in
21 California).

## II. DISCUSSION

A.  Legal Standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the burden
lies with the plaintiff to demonstrate that jurisdiction is proper. *See Schwarzenegger v. Fred Martin
Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In this case, where "the defendant's motion is based
on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie
showing of jurisdictional facts to withstand the motion to dismiss.'" *CollegeSource, Inc. v.*

*AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted).  In doing so, "[t]he plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id*.

B.   Personal Jurisdiction

California's "long-arm" statute allows the exercise of personal jurisdiction to the fullest extent of due process.  *See* Cal. Civ. Code § 410.10.  Due process, in turn, requires that "the defendant have 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  *Martin v. D-wave Sys., Inc.*, No. C-09-03602 RMW, 2009 WL 4572742, at *2 (N.D. Cal. Dec. 1, 2009) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  There is general jurisdiction over a defendant where the defendant's contacts with the forum state "are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes."  *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (stating that a court may assert general jurisdiction over a foreign corporation "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State'").

In the instant case, IPS conceded at the hearing that it was not asserting general jurisdiction.  Absent general jurisdiction, a court may only exercise specific jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim.  *See id.*  Therefore, the Court need only evaluate whether there is specific jurisdiction over Overwatch.

Under Ninth Circuit law,  a court has specific jurisdiction over a defendant if:

(1)   The non-resident defendant purposefully directs his activities or consummates some transaction with the forum or resident thereof; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)   the claim arises out of or relates to the defendant's forum-related activities; and

(3)   the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, is reasonable.

*See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

C. <u>Purposeful Availment</u>

With respect to the first prong of the above test, purposeful availment, and not purposeful direction, is the more appropriate analysis here because this case involves a breach of contract rather than a tort. *See id.* (stating that "[a] purposeful availment analysis is most often used in suits sounding in contract" whereas a purposeful direction analysis "is most often used in suits sounding in tort").

"To have purposely availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The fact that a defendant enters into a contract with a forum resident is not enough, "standing alone," to create jurisdiction. *Id.* Ultimately, "the jurisdictional significance of a defendant's contract . . . is not rigid and formalistic, but rather practical and pragmatic." *Id.* Factors courts have considered in evaluating the jurisdictional significance of a contract include "(1) prior negotiations between the parties; (2) contemplated future consequences; (3) course of dealings between the parties; and (4) whether or not a choice of law provision was included in the contract." *Baca Gardening & Landscaping, Inc. v. Prizm Vinyl Corp.*, No. EDCV 08-1328-VAP (JCx), 2008 WL 4889030, at *4 (C.D. Cal. Nov. 12, 2008); *see also Burger King Corp. v. Rudzewica*, 471 U.S. 462, 479 (1985). Of these, the contemplated future consequences are often of particular significance, with future consequences essentially being where the contract will be performed. *See, e.g.*, *id.* at 478 (stating that "we have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction") (internal quotation marks omitted); *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (in discussing the future consequences of the contract, noting that "the contract concerned a film, most of the work for which would have been performed in California"); *Selhorst v. Alward Fisheries, LLC*, No. C-11-3266 EMC, 2011 WL 4974568, at *4 (N.D. Cal. Oct. 19, 2011) (noting that "the Ninth Circuit has emphasized the importance of the future consequences of a contract").

4

Here, the parties have not indicated whether there was a choice of law provision included in the contract, and there is limited evidence regarding the course of dealings between the parties (other than payments from Overwatch to IPS which are discussed below). Therefore, the first two factors are the most important in the case at bar. As to these factors, even if the contract was negotiated in California, the contract on its face required performance outside of the state, *i.e.*, in Colorado. Moreover, all deliverables provided by IPS were to be sent to Overwatch's facility in Texas. *See Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (finding that defendant purposefully availed itself of the privilege of doing business in Montana because, "[a]lthough contract negotiations took place in Nebraska, the contract expressly requires that [plaintiff] deliver the coal in Montana"). These facts weigh strongly against purposeful availment.

That Overwatch sent payments to IPS in California is far from being dispositive. Indeed, the Ninth Circuit has stated that "the receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction." *Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1443 (9th Cir. 1987); *see also Freudensprung v. Offshore Tech. Svcs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (stating that "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract . . . are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant"); *Sarkis v. Lajcak*, No. C-08-01911 RMW, 2009 WL 3367069, at *4 (N.D. Cal. Oct. 15, 2009) (stating that "[s]ending payments to California when the material and essentially all of the performance of the contract was in Bosnia is not sufficient to justify the exercise of personal jurisdiction in California"). As for IPS's review and analysis of costs in California, courts have repeatedly held that the unilateral activity of a plaintiff cannot confer jurisdiction. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816-17 (9th Cir.1988) (noting that "appellants' statement that they 'performed 90% of [their] activities in the Bay Area,' even if accurate, describes only unilateral activity").

///

///

///

5

IPS's reliance on the audit is unavailing.[2] The audit report, on its face, indicates that Overwatch solicited the audit from a Texas-based government agency. It was that agency's, not Overwatch's, decision to then "farm out" the actual audit to a California-based branch. Just as the unilateral activity of a plaintiff cannot be attributed to a defendant, the unilateral activity of a third party cannot be so attributed. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (stating that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

In its papers, IPS also employs a purposeful direction analysis to support its claim of personal jurisdiction. As noted above, such an analysis is largely off point given that the claim at issue here sounds in contract, and not tort. Nevertheless, even including a purposeful direction analysis, IPS's position is flawed. For example, IPS asserts that Overwatch has purposefully directed conduct at California by marketing itself to the United States Department of Defense (its primary customer) which has an extensive presence in California. Similar arguments, however, have been rejected by other courts. *See, e.g.*, *Prototype Productions, Inc. V. Reset, Inc.*, 844 F. Supp. 2d 691, 703 (E.D. Va. 2012) (stating that "[t]he fact that the U.S. Department of Defense is physically headquartered in this judicial district and that RESET has targeted marketing efforts toward the military does not without more establish that RESET has purposefully directed its activities toward residents of Virginia such that it could reasonably anticipate being haled into court here"); *Brown v. Geha-Werke GmbH*, 69 F. Supp. 2d 770, 777 (D.S.C. 1999) (designing a product for the U.S. military is not the "functional equivalent of designing a product for the market in South Carolina simply because the military has situated a disproportionate number of military installations in . . . the State"). As for IPS's point that the FCS product, which is the subject of the contract, will eventually be deployed by troops in California, the Ninth Circuit has noted that "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum

---

[2] At the hearing, IPS hinged its purposeful availment argument largely on the audit.

state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459–460 (9th Cir.2007). The connection between contract at issue in the case at bar with California is attenuated.

Finally, IPS claims that Overwatch "engaged in California specific advertising" because it co-sponsored a symposium in San Diego that "specifically target[ed] business development," Boice Decl. ¶ 16, and provided product service licenses and training services for a completely different product (IMPACT) to California law enforcement agencies. *See* Opp'n at 4. Here, the problem is that, even if such conduct could satisfy the purposeful availment prong of the specific jurisdiction test (which is doubtful), it would fail to meet the second prong. That is, IPS's claim of breach of contract is completely unrelated to these contacts with California. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (noting that the second prong is a "'but for' test" and that, under this test, "'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action'").

### III. CONCLUSION

For the foregoing reasons, the Court concludes that there is no specific jurisdiction over Overwatch. Accordingly, Overwatch's motion to dismiss for lack of personal jurisdiction is granted.

The Clerk of the Court is instructed to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket No. 11.

IT IS SO ORDERED.

Dated: May 20, 2014

_____
EDWARD M. CHEN
United States District Judge